Raymond Wright
FULL NAME

COMMITTED NAME (if different)

Men's Central Jail. 2500. B7-PO Box 450
FULL ADDRESS INCLUDING NAME OF INSTITUTION

Los Angeles, CA. 90012

6043637
PRISON NUMBER (if applicable)

**FILED**
CLERK, U.S. DISTRICT COURT

1/14/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: ___DTA___ DEPUTY

RELATED DDJ

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

Raymond Wright

PLAINTIFF,

LAPD Chief Michael Moore, City of LA,
Officer ~~Badge# 22305~~, Officer L. Roope#
44256, Benjamin Leon, Unknown DEFENDANT(S).
LAPD officers

CASE NUMBER    2:21-cv-00502-DOC-GJS

*To be supplied by the Clerk*

**CIVIL RIGHTS COMPLAINT**
**PURSUANT TO** *(Check one)*

☑ 42 U.S.C. § 1983
☐ Bivens v. Six Unknown Agents 403 U.S. 388 (1971)

## A. PREVIOUS LAWSUITS

1. Have you brought any other lawsuits in a federal court while a prisoner: ☑ Yes    ☐ No

2. If your answer to "1." is yes, how many?  Can't recall

   Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

   Wright V. Crovetti, Et Al  Don't rember case number.
   Can't recall other suits or case numbers

a. Parties to this previous lawsuit:

Plaintiff _____

_____

Defendants _____

_____

b. Court _____

_____

c. Docket or case number _____

d. Name of judge to whom case was assigned _____

e. Disposition (For example:  Was the case dismissed?  If so, what was the basis for dismissal?  Was it appealed?  Is it still pending?) _____

f. Issues raised: _____

_____

_____

g. Approximate date of filing lawsuit: _____

h. Approximate date of disposition _____

## B.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

1. Is there a grievance procedure available at the institution where the events relating to your current complaint occurred?  ☐ Yes    ☑ No

2. Have you filed a grievance concerning the facts relating to your current complaint?  ☐ Yes    ☑ No

   If your answer is no, explain why not <u>Incidents did not occur in an institution but on the street prior to and during arrest</u>

3. Is the grievance procedure completed?  ☐ Yes    ☑ No

   If your answer is no, explain why not <u>Constitutional injury did not occur in a jail or institution</u>

4. Please attach copies of papers related to the grievance procedure.

## C.  JURISDICTION

This complaint alleges that the civil rights of plaintiff <u>Raymond Wright</u>
(print plaintiff's name)

who presently resides at <u>Men's Central Jail· 450 Bauchet Street Los Angeles, CA 90012</u>
(mailing address or place of confinement)

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at

_____
(institution/city where violation occurred)

on (date or dates) ~~8/1/20, 10/27/20, 10/31/20~~ August 2020 , ~~9/1/20, 10/27/20, 10/31/20~~ August 2020 , 10/27/20, 10/31/20 .
(Claim I)                                    (Claim II)                                    (Claim III)

**NOTE:**    You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1.   Defendant    Michael Moore _____ resides or works at
(full name of first defendant)
7600 South Broadway Los Angeles, CA 90003 _____
(full address of first defendant)
LAPD Chief of Police _____
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual   ☑ official capacity.

Explain how this defendant was acting under color of law:

Defendant is being sued for setting a custom or policy of failing to correct his subordinate officers' violations of citizens rights and failing to correct them, supervisory liability.

2.   Defendant    City of LA _____ resides or works at
(full name of first defendant)
_____
(full address of first defendant)
Employer of LAPD employees _____
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual   ☑ official capacity.

Explain how this defendant was acting under color of law:

City of LA is also being sued under supervisory liability.

3.   Defendant    Officer Podesto #32305 _____ resides or works at
(full name of first defendant)
7600 South Broadway Los Angeles, CA 90003
(full address of first defendant)
Police Officer for LAPD _____
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☑ individual   ☑ official capacity.

Explain how this defendant was acting under color of law:

Defendant put my life into imminent danger by failing to arrest the 3 gang members who tried to murder me by firearm and kidnap me, when he could have arrested them. Defendant solely arrested victim for being ex-felon with a gun, when I had a justification defense. Defendant did not write that he was going to continue investigation into the Investigative Report he wrote for ADW: Shooting naming me as the victim. Defendant falsified reports saying no shell casings were found at the crime scene when there were. Defendant had no reason to impound my Ford Expedition for further evidence...

4. Defendant ___Officer A. Roope #44256_____ resides or works at
(full name of first defendant)

___7600 South Broadway Los Angeles CA 90003_____
(full address of first defendant)

~~Police~~ Officer for LAPD_____
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☑ individual   ☑ official capacity.

Explain how this defendant was acting under color of law:

~~This defendant is Rule stas partner so claims are identical.~~ Based on their failure to ~~alrest~~ the gang-affiliated shooting suspects, my life's going to continue to be in imminent danger upon my release from jail custody soon. I'm not a gang member.

5. Defendant ___Denise Nelson_____ resides or works at
(full name of first defendant)

___720 E. 76th Place Los Angeles CA 90003_____
(full address of first defendant)

~~landlord and owner of Denise Housing, manages housing for OPI~~
(defendant's position and title, if any)
~~and sublets houses from other homeowners or OPI.~~

The defendant is sued in his/her (Check one or both): ☑ individual   ☑ official capacity.

Explain how this defendant was acting under color of law:

Defendant was court ordered to vacate One Parkside Properties Incorporated "OPI" owned house located at 654 E. 75th Street Los Angeles CA 90003 by Sept 1, 2020, because the house was ordered to be condemned or shut down, and Denise failed to pay all of the fines ordered by the court for various habitability violations, so to keep from losing some of her income from managing Transitional houses for OPI, Denise moved all the tenants with kids from the house on E. 75 street to another OPI owned house at 720 E. 76 Pl, Los Angeles CA 90003. and moved the single tenants from the house on E. 76 Pl, where I'd been bitten by a spider in my sleep due to a screen missing from my room window and hospitalized and treated with strong antibiotics for scallious on my right thigh in August 2020, into other OPI owned houses she managed or sublets or into houses she subletted from other homeowners. Or a tenant had to leave and find housing own their own without a written notice but a last minute verbal notice. I had no problem parking my 2 vehicles on the street at E. 76th Place. But when I was moved from E. 76th Pl to a 3-houses property at 828½ W. 80th Street Los Angeles CA 90044 not only was my rent for a master bedroom increased from $900 a month into $1,000 a month during the Covid 19 pandemic, Denise did not have any of her workers assist any of the family tenants or single tenants move their property into their new housing. Denise told me that I could only park 1 vehicle on the property and had to park the other vehicle on the crowded street. So I parked my Red 2000 Ford Expedition in my parking space by the garage in front of 828½ W. 80th street and I parked my 2004 Kia Optima outside the property on the street. Linda, a female tenant whose property I'd moved along with mine's from E. 76 Pl, had her compact car parked next to my SUV by 828 W. 80th street, which is the second backhouse. Another tenant, identity unknown, had 3 cars parked on the property and had an entire garage to himself. One night I came home around 2:30am in early October 2020 after working as a sidewalk vendor and a new tenant had his black Cadillac Escalade parked in my spot. His girlfriend or wife had her white Honda Accord parked inside the garage in 828½ W. 80th Street. I went to their room door across the hall

\* How Defendant Denise Nelson acted under Color of Law continued —Page 4 A

I. from mines on the Third floor and Knocked softly on the door. After apologising for Knocking on their room door at that time of morning, I informed them that I live in the master bedroom across the hall from them. I just got off work. I'm tired, and y'all got your truck parked in my parking spot.

II. The male told me that the landlord Denise told them that he can park his Cadillac Escalade truck in my spot and his woman can park her car in the garage. I explained, "I don't Know why she (Denise) would say something like that? When she Knows that I'm the first one to move into this house and that is my parking spot. Because she told me I had to park my other car on the street."

III. We both decided to call and text Denise to resolve the issue.

IV. I recall texting Denise, whom is African-American like me and all the tenants and/or shooting suspects involved in the incidents their in, and saying that she's subjecting me to discriminatory housing in violation of my Fourteenth Amendment Constitutional rights to equal protection of the laws. I added, you have one tenant — whom I heard was a relative but I'm not sure — who has 3-cars parked on the property and the whole garage. to 828½ W. 80th Street, and you have two new tenants with 2 cars on the property and the garage. to 828¾ W. 80th Street. But you're telling me that I can only park 1-car on the property and I have to park the other car on the street.

V. A tenant doesn't have a right to parking on a property unless it's included in a rental agreement. They only get 1-parking spot per household, not 2 and 3. Denise argued that she doesn't give tenants rental agreements to sign, you (me) live in a transitional housing and basically she can do whatever she wants to do, including evict me on the spot without a reason.

VI. I further added, that once I put money in your hand and the General Belief Housing Subsidy "Pilot Program" issued you a check for $575 to house me; you give me the Keys to the house, move me onto the property, and verbally give me a parking space; that forms a landlord/tenant relationship.

\* Hows Defendant Denise Nelson acted under Color of Law continued          -Page 4 B

I have proof that my GB Pilot Program worker paid you $575 rent and proof that I paid you $325 and $425 out of pocket rent through texts, receipts or Cashapp to pay the full $900 and $1,000 monthly rents. Only after I told Denise that I won't have no choice but to file a lawsuit against her for breach of contract, subjecting me to inferior and discriminatory living conditions, and for violating my right to quiet enjoyment did she let me get my parking spot back.

VIII. The new male tenant moved his truck to a parking spot in front of the front house, 826 W. 80th street, close to the entrance/exit gate. His wife or girlfriend moved her car out of the garage near my parking spot beside one of the other tenants 3-cars between the front and middle houses. But the new couple and the male tenant with the 3-cars constantly had friends and relatives over that blocked me and other tenants in so we could not pull in or leave to go to go to work.

IX. Moreover, after moving in Denise told the tenants that if we ever see the property managers or owners on the property and they question us tell them that we're X-Ray technicians, nurses, or a chriopraotor. Because she was only suppose to house people who have medical needs or who need outpatient care.

X. So Denise deceived the owners and told her tenants to lie for her, after we moved in, after the fact.

XI. However, I quickly found out that Denise had gangmembers, pimps and prostitutes residing on the property.

XII. Because Denise failed to timely complete my housing relocation paperwork by its due date of, October 15, 2020, the Pilot Program didn't pay my rent for November 2020.

XIII. On October 27, 2020 at approximately 2:30 a.m I arrived home from work and there was a blue car parked in my parking, which was later determined to

\* How Defendant Denise Nelson acted under color of Law continued              Page 4C

belong to a white male visiting a tenant in the front house. I parked
my Ford Expedition behind the unpaying guest's car but slightly blocking the
garage where the at least 6'4" 275 lbs. gang affiliated tenant with the
3 cars parked 2 of his cars. While I was asleep the guest called 77th Street
Police. The unknown LAPD officers defendants came onto the property
with a tow truck and threatened to impound everybody's car on the property
if I didn't come downstairs and move my truck. I was later told by the inflamed
tenants

IX. The beeping sound of the tow truck going back and forth trying to get my
truck from an angle is what woke me up. When I went downstairs the police
asked me if the ted truck was mine's? I said yeah it's mine's. I'm a tenant
here. That blue car is in my parking spot. The White male officer told me
that they're trying to get me to move my truck so they can impound the
blue car.

XI. As I was backing my Expedition up while the tow truck was driving towards
the extrance/exit gate so I can exit the property so the tow truck can come
get the blue car, I observed several of the 5 or 6 White or Hispanic, male
and female LAPD officers laughing and snickering at me. While double
parked on the crowded street I observed the blue car drive off the property,
the tow truck pull off, and the unknown officers get into their police
cars and drive away. I drove to my parking spot, parked my truck, and went
back to sleep feeling I'd just been discriminated against by the Unknown
LAPD officer Defendants.

XVI. Later that day, 10/27/2020, at approximately 1:30p.m., as I was about to turn the key
in the ignition to go to work, downtown L.A as a sidewalk vendor I saw Denise,
several tenants and her workers come gang up on me. Inflamed by the police and
tow truck coming on the property threatening to impound their cars because of
me. They wrongfully accused me of calling the police. The big dude with the

\* How Defendant Denise Nelson acted under Color of Law continued          Page 4D

3 - cars came directly up to me in an intimidating manner and angrily said, "Why did I block his garage?" Completing ignoring the facts that an unpaying guest parked his car in a paying tenant's parking spot. He further stated that he and his gang play with guns. Denise said "fuck you" to me. All of their anger should have been directed at the tenant who allowed his or her guest to park his car in my parking spot, and whose guest called the police that came with the tow truck, not me.

XVII. Here, the unknown police defendants discriminatory misconduct along with the landlord's subjected me to retaliatory treatment and an hostile living environment by the landlord and tenants. Which in just 4-days later culminated in me becoming a victim of kidnapping and an attempted murder by firearm over the same parking issue by a gang affiliated tenant and his gang banging guests.

XVIII. A couple days later, on October 29, 2020, I told my landlord that I don't want to be going through no arguments or fights with other tenants or their guests about them parking in my parking spot. Denise told me that she's going to hire a security guard to keep tenants' guests from parking their cars on the property. She added if I paid her $700 cash right now to cover the rent for November 2020 since a mishap resulted in the Pilot Program not paying the rent for that month, she'll complete the new housing relocation paperwork and fax it to my worker so they can pay her $575 towards my rent for December 2020 and I pay $425 out of pocket to cover the full $1,000 rent for December 2020.

XIX. On October 29, 2020 I gave Denise $700 cash. She gave me a rent receipt stating that my rent was paid from 10/29/2020 until 11/29/2020. However, two days later on October 31, 2020 I was kidnapped and almost murdered by gunfire on the property by the gang banging tenant with the black Escalade truck who lived in the room across the hall from me and two of his gang banging friends over them parking in my parking spot. My life is still be in imminent danger because the police could have, but failed to arrest the 3-gang affiliated

* How Defendant Denise Nelson acted under Color of law continued                    -Page 4 E

shooting suspects. Despite the police writing in the incident and arrest
reports that they heard 2 distinct gunshots and I positively identified the
shooting suspects and their cars to the police and told Defendant Podesta that
the suspects and their cars were still on the blocked off property during the
investigation.

XX. Moreover, over $500 cash, my Id, Bank of America Debit Card, EBT card, Social Security
Card, Medicare Card, Cosco Black Executive card, Metro Tap Card were inside my black
Supreme bag that was left inside my room when I was arrested on Oct. 31, 2020.
Denise has all of my money, identification, and all of my personal property primarily
consisting of a brand new full size bed and mattress that I paid $335 cash for, a new
55" inch screen Westinghouse Ruku TV that I paid $465 dollars for with my debit card
at Target, a brand new never used child electric scooter I purchased online for
$156, a new barely used adult size electric scooter that I bought online for
$267, a used refrigerator I paid $185 cash for, a new 1200 watts microwave
oven that I bought with my debit card for $68, a new HP Envy printer that I
paid $75 cash for at Target, several various new and used laptop computers and
Ipads that I paid various prices for, an Applebox, modem and router for my
Spectrum cable, internet and voice, several compact stereos that I paid various
prices for, a brand new 5-drawer black dresser that I paid $135 cash for
from a furniture store on Florence Ave., all of my clothes and shoes, at least 150
new and used DVD's I paid various prices for, a brand new treadmill that
I bought online with my debit card for $267, several new and used DVD
players I paid various prices for, an 8' folding table I sat my bigscreen TV on
I paid $45 cash for at Walmart and various other items or appliances.
XXI. My email account will verify all of my online purchases, photos on
my cellphone or Facebook account would further verify almost all of the
property in my room. Some receipts were left in my room, and some receipts
were inside a folder in my backpack that was towed with my Expedition.

\*How Defendant Denise Nelson acted under Color of Law continued.                    Page 4F

XXII. After my monthly rent ended on November 29,2020 Defendant Denise Nelson failed to come to the jail and personally serve me with a 3-day notice to pay or quit. Or have her lawyer serve it on her behalf. She failed to file an unlawful detainer suit and have me served with it, or initiate any type of legally mandated eviction proceedings.

XXIII. Defendant Denise Nelson failed to provide plaintiff with adequate notice as to the existence of the seized property, in violation of Cal. Civil Code § 1983. She failed to provide plaintiff with written notice as to where plaintiff could claim the seized property, in violation of Cal. Civ. Code § 1984. She failed to provide notice of the time and place of the public sale of the seized property at least 5-days before the sale is held, in violation of Cal. Govt. Code § 6066. She failed to store the seized property in a place of safekeeping or exercise reasonable care in storing the property, in violation of Cal. Civ. Code § 1986. She failed to circulate a notice of public sale that adequately described the seized property, in violation of California Civil Code § 1988.

IVXX. I haven't read a case or case law that states if a tenant goes to jail he or she automatically abandons their personal property, and a landlord can do whatever they want to do with such property without complying with the legal eviction process.

XXV. My Expedition is impounded and my 2004 Kia Optima is either towed, possibly collecting tickets, or was stolen. These incidents wouldn't have occurred had Defendant Denise Nelson hired a security guard to prevent non-paying guests from parking their vehicles in paying tenants parking spaces. Because she was negligent in her duties as a landlord and breached on her verbal contract to hire a security guard after I paid my rent "early", this defendant is the main defendant who's responsible for me almost getting murdered where I live.

How Defendant Denise Nelson acted under Color of law ending                    Page 4G

XXVI. Further, if Defendant Denise Nelson is still accepting checks or warrants in the sum of $575 from the Pilot Program to pay my rent, she's committing fraud. I have to pay all that money back. I'll find out for sure upon my release soon under a defense of justification, probation or time served.

XXVII. This defendant is also the main defendant who put my life into imminent danger and is the reason why my life will continue to be in imminent danger from the gang affiliated shooting suspects upon my release from custody.


6. Defendant Unknown LAPD officers

   7600 South Broadway Los Angeles, CA. 90003

     Police Officers for LAPD

The defendants are being sued in their ☑ Individual and ☑ official capacities
Explain how this defendant was acting under color of law.

Their actions under color of law were included in Defendant Nelson's

**D. CLAIMS***

**CLAIM I**

The following civil right has been violated:

Defendants violated my 8th and 14th Amendments Federal Constitut-
ional rights.
Defendant Denise Nelson also violated my 1st and 4th Amendments
rights to be free from retaliation and she illegally seized my
property without complying with the eviction process or Cal. Civ.
Code SS 1983, 1984, 1986, and 1988; Cal. Govt. Code S 6066

Supporting Facts: Include all facts you consider important. State the facts clearly, in your own words, and without
citing legal authority or argument. Be certain you describe, in separately numbered paragraphs, exactly what each
DEFENDANT (by name) did to violate your right.

On 10/31/2010 Defendants Podesta and Boope wrote an Incident Report,
Incident #20103100002792, DR #2012 23686, charging 3 gang affiliated
shooting suspects with Assault With a Deadly Weapon ADW shooting,
naming me as the victim. They failed to arrest the suspects who had formed a
semi-circle in front of my Expedition preventing me from freely exiting the
property, began to shout threats and obscenities at me and then shot at me
2-times with a .22 Caliber semi-automatic handgun within 5 feet
of me, shattering the driver's side window and putting a bullet hole
into the driver's side door. I grabbed a .380 caliber semiautomatic
handgun, exited the vehicle and ran for my life for fear that if I left
it behind one of the gang members would have got it and shot me
with it. I jumped the wall into an alley behind my residence and
threw the gun and laid down on the ground facing Defendants Podesta
and Boope's black and white LAPD SUV. A darkskinned black male

*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same
outline.

*Supporting Facts Continued                                    Page 5 A

I. with shoulder length dreadlocks who was possibly a 4th gang member had his black car parked beside the police SUV. He was not a police or detective. But stood by the officers when I told them that I had just got shot at by gang members.

II. Another officer came into the alley and said they'd found .22 Caliber shell casings at the scene. Podesta omitted this from the incident and arrest reports charging me with being an ex-felon with a firearm. Defendant Podesta refused my request to take a Gunshot Residue "GSR" test on my hands to prove I did shoot a gun or shoot my own truck up. He told me if I didn't throw the gun, I would have been another statistic, meaning they would have shot and killed me.

III. The streets from 80th and Hoover to 80th and Vermont Ave. were blocked off with yellow police tape. There were at least 15 to 20 black and white LAPD cars or SUV's parked in front of the entrance exit gate making it impossible for the shooting suspects to escape capture. The officers' body worn video "BWV" were turned on during the investigation. This will be requested and admitted into evidence during pre-trial stage of this civil matter.

IV. I described all the kidnap and shooting suspects and their 3 different vehicles to defendants Podesta and Boope and told them that they're still on the property hiding in a tenant's room or in a garage. Although Podesta admitted to me that he saw the shooters burgundy or purple Jaguar parked on the property, he and Boope failed to arrest any of the shooting suspects who'd tried to shoot me death over my own parking spot when I got back into my truck, and tried to leave and go to work.

V. The victim was solely arrested and had my vehicle wrongfully impounded. My life is still in imminent danger by the gang-affiliated shooting suspects upon my release from custody because the police deliberately failed to arrest them.

**E. REQUEST FOR RELIEF**

I believe that I am entitled to the following specific relief:

I believe I'm entitled to $50-million dollars in general and punitive damages from law enforcement defendant and the city of L.A.

I'm believe I'm entitled to $5-million dollars in compensatory and punitive damages from Defendant Denise Nelson because I also had all of my personal property stored in Extra space Storage auctioned off when I got locked up in jail.

January 7, 2021
*(Date)*

Raymond Wright
*(Signature of Plaintiff)*

Raymond Wright #6043637
Men's Central Jail 2500 · B7
450 Bauchet Street
Los Angeles, CA 90012

LOS ANGELES
12 JAN 2021



United States District Court
Central District of California
255 E. Temple Street, Suite TS-134
Los Angeles, CA 90012

CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY
JAN 14 2021
CLERK, U.S. DISTRICT COURT
RECEIVED



"Legal Mail"

90012-333432







THIS ENVELOPE IS RECYCLABLE AND MADE WITH 30% POST CONSUMER CONTENT

© USPS 2019